| | |
|---|---|
| 1 | **THE WAGNER LAW GROUP, P.C.** |
| 2 | Joseph A. Garofolo (SBN 214614)<br>315 Montgomery Street, Suite 900 |
| 3 | San Francisco, CA 94104<br>Phone: 415-625-0002 |
| 4 | Fax: 415-358-8300<br>Email: jgarofolo@wagnerlawgroup.com |
| 5 | |
| 6 | *[Remaining Counsel on the Signature Page]* |
| 7 | Specially Appearing for Defendant, the FDIC as Receiver for First Republic Bank |
| 8 | |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | | |
|---|---|---|
| 12-28 | MICHAEL J. HARRINGTON, DEBRA ACHKIRE, STACY ALLRED, LIONEL ANTUNES, NORMA ARUJO, JASON BABB, KEVIN BARNES, BRETT BERRY, CARY BIREN, DAVID BLOOM, STEPHANIE BONTEMPS, ABE BORENSTEIN, CYNTHIA BOW, DAVID BRADY, KAREN BRATT, KYLE BRIGGS, JEFFREY BRUCE, BARBARA BRUSER, GEORGE BUZA, KEVIN CAREY, SUSAN CARLSON, RICHARD CHALIFOUX, THOMAS CHENG, SEEMA CHETAL, SIDNEY CHEUNG, EVE CHIN, JULIE CHIN, SANAH CHUNG, CAMERON CLIFFORD, TERENCE CONDREN, KAREN CONWAY, GINA COSTELLO, REBECCA DECESARO, GLENN DEGENAARS, JIM DENVER, ED DOBRANSKI, MURAT DOGANAKSOY, SCOTT DUFRESNE, DIANA MOMJIAN ELTON, SILVIA FERNANDEZ, DOUG FIEK, SCOTT FINDER, TOM FINNEGAN, MIKE FRANKS, JOHN FREY, WES FUKUMORI, YVA GALLANT, STEVE GANOTIS, MARK GENOVESE, MICHAEL GLYNN, GREG GOOCH, RICK GORDON, SUJIT GOVINDRAJ, WILLIAM GRAHAM, JAYVEE GULMATICO, MATTHEW HALL, JERALD HALVERSON, HOOMAN | Case No: 4:23-cv-06296-HSG<br><br>**OPPOSITION OF DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR FIRST REPUBLIC BANK, TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY** |

**DEFENDANT FDIC's OPPOSITION TO MOTION FOR TRO - 4:23-cv-06296-HSG**

| | |
|---|---|
| 1 | HAMZEH, JOE HARPSTER, TIGE HARRIS, BRADY HARTER, RENE HENRIKSEN, MICHAEL HERRON, MIRANDA HOLMES, ANDREW HOLTZ, AMY HONG, MARY JANE HOOD, LYNDSEY HUDGINS, JACQUELINE HUIE, JEFFREY IHRIG, ASPASIA IOSIFELLIS, RICK ISRAEL, MAYANK JOHRI, MARK JONES, SHARON JONES, JASON KAIMER, FAZAL KAKA, ROBERT KARSON, FRANK KEANE, KEN KEARNS, BASANT KEDIA, MARK KEMLER, ALEX KUKURUDZ, PAUL KYE, JEANMARIE LABONTE, DARA LANDA, ANNA HOWARD LAVARY, ALAN LE VINE, JACK LEE, LISA LEMONS, KAY LEVIS, JEFFREY OBERHAUSER-LIM, MIRANDA LIN, ANDREW LIOU, BRIAN LITMAN, MARGARET LIU, RICHARD LOMBARDOZZI, TOM LONGSTROTH, JOSHUA LUKS, JEFF MAIER, STEPHEN MAROTTO, MAUREEN MCNALLY, JOHN MCNAMEE, KANIKA MEDIRATTA, VICTOR MENA, CHRIS MERRIFIELD, DAVID MOE, ROBERT MOREHEAD, JOHN MORONEY, KARIN NAPEL, NIRMALA NARINE, WILLIAM NEIL, LUCAS NEWMAN, LOURDES OCHOA, JIM OCHSNER, JENN O'REILLY, BARBARA PALMER, FRANCIS PARSON, ARTHUR PENSATO, RANDY PETERSON, MICHELE PICCIRILLO, GARY POLLOCK, CHARLES RADCLIFFE, CHAD REGO, PAUL REINSMITH, ALAN REMEDIOS, STEVE ROCHLIN, LYNN RODRIGUEZ, JO-ANN ROSE, RICHARD SCARPELLI, THOMAS SCHEIDIG, ADAM SCHLESINGER, JULIA SCHNEIDER, MICHAEL SCHWARTZ, JEAN MARIE SCUNGIO, NANCY SEGRETO, ERIC SEUBERT, MARJAN SHARIAT, MIKE SHAYESTEHFAR, LISA SIEGEL, ALAN SIQUEIRA, STEVE SOJA, DAN SOKOL, AMIE STEVENS, GREGORY TANZER, PAULA TONI TARTAMELLA, JOE THOMASON, MICHAEL TINNEY, STEVE TROMP, |

**DEFENDANT FDIC's OPPOSITION TO MOTION FOR TRO - 4:23-cv-06296-HSG**

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | CORINNA WAN, CHRISTINE WANG, KAREN WEISSENBACH, ELISE WEN, ALISON WESTBROOK, JILL ANN WHITBY, DANIEL WHITE, BRENT WIBLIN, JAMES WILCOX, MARK WILLIAMS, EMILY WU, JEFFREY YANDLE, TRAYHWA YVONNE YANG, DERRICK YEE, CHITRA YELLAJOSYULA, MICHAEL ZAZZARA, BART ZITNITSKY, SAM ZOOB, AND MARGARET ZYWICZ, |
| 8 | Plaintiffs, |
| 9 | vs. |
| 10<br>11<br>12 | FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for First Republic Bank,<br>       Defendant. |

**DEFENDANT FDIC's OPPOSITION TO MOTION FOR TRO - 4:23-cv-06296-HSG**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

I.    BACKGROUND ............................................................................................................. 1

II.   PLAINTIFFS HAVE FAILED TO SERVE THE FDIC-R UNDER FED. R. CIV. P. 4(i) ................................................................................................................................... 3

III.  THE COURT IS STATUTORILY PROHIBITED BY 12 U.S.C. § 1821(j) FROM ISSUING EQUITABLE RELIEF ENJOINING, RESTRAINING, OR AFFECTING THE FDIC IN THE EXERCISE OF ITS POWERS AND DUTIES AS A RECEIVER ....................................................................................................................... 4

IV.   PLAINTIFFS REALLY JUST WANT CASH, AND THAT REMEDY PRECLUDES EXTRAORDINARY RELIEF .................................................................. 7

    A.   Plaintiffs Cannot Show a Likelihood of Success on the Merits ............................... 7

    B.   Plaintiffs Have Been Paid in Full, They Just Don't Like the Payment Method ...... 9

    C.   The Balance of Equities with Respect to the Public Interest Tips in Favor of FDIC-R, and All of the Creditors Who Would Be Harmed by Plaintiffs Skipping the Priority Line ....................................................................................... 10

V.    PLAINTIFFS' REQUEST FOR EXPEDITED DISCOVERY IS MOOT BECAUSE THE COURT IS PROHIBITED FROM ORDERING THE REQUESTED INJUNCTIVE RELIEF ................................................................................................... 11

VI.   CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*American Legalnet, Inc. v. Davis*, 673 F.Supp.2d 1063 (C.D. Cal. 2009).......................................... 11

*Bank of America Nat. Ass'n v. Colonial Bank,* 604 F.3d 1239 (11th Cir. 2010) .............................. 5, 6

*Battista v FDIC,* 95 F.3d 1111 (9th Cir 1999) ................................................................................ 2, 8

*Bursick v. One Fourth St. N., Ltd.*, 84 F.3d 1395 (11th Cir. 1996) ........................................................ 7

*Colburn v. Hickory Springs Mfg. Co.*, 448 F. Supp. 3d 512 (E.D.N.C. 2020) ...................................... 8

*Cortina v. Sorvan Bank, N.A.*, 927 F. Supp. 439 (S.D. Fla. 1994) ........................................................ 8

*Costa v. RTC*, 789 F. Supp. 43 (D. Mass. 1991) .................................................................................. 6

*Fowler v. United States*, 258 F. Supp. 638 (C.D. Cal. 1966) .............................................................. 12

*Franklin Bank v. FDIC*, 850 F. Supp. 845 (N.D. Cal. 1994) ................................................................. 9

*Goodman v. Resolution Trust Corp.*, 7 F.3d 1123 (4th Cir. 1993) ........................................................ 8

*Gross v Bell Sav. Bank PA SA*, 974 F.2d 403 (3d Cir. 1992) ................................................................ 5

*hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022) ....................................................... 7, 9

*In re Landmark Land Co.*, 973 F.2d 283 (4th Cir. 1992) ...................................................................... 6

*Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389 (9th Cir 2015) ................................................. 11

*Joint Venture v. Onion*, 938 F.2d 35 (5th Cir. 1991) ............................................................................ 6

*Maher v. FDIC*, 441 F.3d 522 (7th Cir. 2006) ..................................................................................... 7

*Mcallister v. Resolution Trust Corp.*, 201 F. 3d 570 (5th Cir. 2000) .................................................... 8

*Qualcomm Inc. v. Compal Elecs., Inc.*, 283 F. Supp. 3d 905 (S.D. Cal. 2017) .................................. 10

*Resolution Trust Corp. v. MacKenzie*, 60 F.3d 972 (2d Cir. 1995) ...................................................... 7

*Resolution Trust Corp. v. Titan Fin. Corp.*, 36 F.3d 891 (9th Cir. 1994) .............................................. 9

*Sahni v. American Diversified Partners*, 83 F.3d 1054 (9th Cir. 1996) ........................................... 5, 7

*Sampson v. Murray*, 415 U.S. 61 (1974) ............................................................................................. 9

*Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002) .................................... 11

*Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703 (1st Cir. 1992) ................................. 6, 7

*TGG Mgmt. Co. v. Petraglia*, No. 19-2007, 2019 WL 6310556 (S.D. Cal. Nov. 25, 2019) .............. 11

*Volges v. Resolution Trust Corp.*, 32 F.3d 50 (2d Cir. 1994) ................................................................ 5

*Ward v. RTC*, 796 F. Supp. 256 (S.D. Tex. 1992) ................................................................................ 6

*Westport Bank & Trust Co. v. Geraghty,* 90 F.3d 661 (2d Cir. 1999) .................................................. 7

**STATUTES**

12 U.S.C. § 1819(b)(1) ........................................................................................................................ 3

12 U.S.C. § 1821(c)(13)(B) ................................................................................................................ 4
12 U.S.C. § 1821(d)(11) ............................................................................................................. 11, 12
12 U.S.C. § 1821(d)(12) ................................................................................................................... 5
12 U.S.C. § 1821(d)(13)(D) .............................................................................................................. 2
12 U.S.C. § 1821(d)(13)(E) .............................................................................................................. 4
12 U.S.C. § 1821(d)(18) ................................................................................................................... 5
12 U.S.C. § 1821(d)(2)(B) ................................................................................................................ 4
12 U.S.C. § 1821(d)(2)(E) ................................................................................................................ 4
12 U.S.C. § 1821(d)(2)(H) ................................................................................................................ 4
12 U.S.C. § 1821(d)(3)-(11) .............................................................................................................. 4
12 U.S.C. § 1821(d)(5) ..................................................................................................................... 2
12 U.S.C. § 1821(e) .......................................................................................................................... 5
12 U.S.C. § 1821(f) ........................................................................................................................... 5
12 U.S.C. § 1821(j) ................................................................................................................... passim
29 U.S.C. § 1001 .............................................................................................................................. 6

**RULES**

Fed. R. Civ. P. 4(i) ....................................................................................................................... 2, 3

Comes now the Defendant, Federal Deposit Insurance Corporation, as Receiver for First Republic Bank ("FDIC-R"), and appears specially, on a limited basis and without consenting to service, to submit this opposition to Plaintiffs' Motion for a Temporary Restraining Order ("TRO"), Order to Show Cause Regarding Preliminary Injunction, and Expedited Discovery (DE 3, "Motion"). For the reasons set forth below, this Court should deny Plaintiffs' Motion as premature because the Court has no jurisdiction over the named defendant who has not yet been served and is thus not a party to this case. The Court should also deny Plaintiffs' Motion because the Court is statutorily prohibited by the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821(j), from issuing an order enjoining or restraining the FDIC-R in the exercise of its powers or functions as a receiver, particularly with regard to extraordinary equitable remedies, such as injunctions. Plaintiffs' claims have also already been paid in full to the extent the law allows through the receivership administrative claims process. Moreover, Plaintiffs have not presented sufficient facts or law to support the elements of the injunctive relief sought. Since Plaintiffs cannot legally obtain the relief they seek in this Motion, the need for expedited discovery to prove entitlement to that relief is moot and thus the request should be denied.

I.   **BACKGROUND**

Plaintiffs filed a Complaint against the FDIC-R on December 5, 2023. DE 1 ("Complaint" or "Compl."). Plaintiffs identify themselves as the "majority" of former employees of First Republic Bank ("FRB") whose assets are "tied up" in the FRB Non-Qualified Deferred Compensation Plan[1] Trust, which they identify as the "Rabbi Trust."[2] Among other things, the Complaint seeks injunctive relief against the FDIC-R. Compl. ¶¶ 38–53.

On the same day Plaintiffs filed their Complaint, and before serving the FDIC-R, Plaintiffs filed the Motion. DE 3. The Motion essentially repeats the allegations in the Complaint, particularly those seeking injunctive relief. *Cf.*, Motion at 4, 9, 11–14, Compl. ¶¶ 4, 25, 29, 49–53.

---

[1] References to the "Plan" herein relate to this deferred compensation identified in Plaintiffs' Motion.
[2] References to the "Rabbi Trust" herein relate to the FRB Non-Qualified Deferred Compensation Plan Trust identified in Plaintiffs' Motion.

1

**DEFENDANT FDIC's OPPOSITION TO MOTION FOR TRO - 4:23-cv-06296-HSG**

1   Plaintiffs disregarded the Court's December 6, 2023 instruction to file a Proof of Service upon the Defendant, FDIC-R. DE 5. Instead, Plaintiffs only filed the Summons previously issued by the Court clerk. DE 7. The Summons was mailed, but not received by the FDIC-R until December 12, 2023, one week after both the Complaint and Motion for TRO were filed. Plaintiffs have yet to comply with the service requirements of Fed. R. Civ. P. 4(i), (service upon the United States, its Agencies, Corporations and Employees) because the clerk's docket reflects that a summons has neither been applied for, issued, nor served upon the U.S. Attorney General or the U.S. Attorney in the Northern District of California. *See generally* DE 1-15. None of the three legally mandated designees for service have been properly served with the Complaint, the Motion, or the Court's standing orders, as required by the Court's instructions.

On the evening of December 6, 2023, Plaintiffs emailed two other FDIC employees, who were/are not authorized agents to accept service of process, copies of the Complaint and Motion. *See* DE 15. Nevertheless, despite late and incomplete service of process, the FDIC-R has scrambled to become familiar with the Complaint and the Motion, retain counsel, and timely file this Opposition.

Prior to this lawsuit, the FDIC-R notified each Plaintiff by letter of the statutorily-mandated administrative claims process detailed in FIRREA at 12 U.S.C. § 1821(d)(5)-(13), the mechanics for persons with claims against the Receiver ("creditors") to submit a Proof of Claim, and the claim deadline date ("Claims Bar Date"). The FDIC-R believes the majority of Plaintiffs timely submitted their individual Proofs of Claim. For those who did not file a proof of claim, or who filed after the Claims Bar Date, the Court lacks subject matter jurisdiction as to those claims and claimants and such claims should be dismissed. 12 U.S.C. § 1821(d)(13)(D). After review, the FDIC-R notified each Plaintiff that the Receiver allowed as unsecured claims the part of each claim representing the amount of deferred wages. The FDIC-R paid those amounts in full by sending each Plaintiff a Notice of Allowance of Claim, previously referred to as a Receiver's Certificate ("RC"). *Battista v FDIC,* 95 F.3d 1111, 1113 (9th Cir 1999) (holding that the Receiver's payment via Receiver's Certificate is legal payment in full). However, the FDIC-R disallowed, as not proven to the satisfaction of the FDIC-R, the portion of each claim attributable to money purportedly held as assets of the Plan or the

2
**DEFENDANT FDIC's OPPOSITION TO MOTION FOR TRO - 4:23-cv-06296-HSG**

Trust. Plaintiffs seek to jump the line of creditors in FIRREA's depositor preference scheme in order to recover unspecified cash amounts of the disallowed portions of their receivership claims.

## II. PLAINTIFFS HAVE FAILED TO SERVE THE FDIC-R UNDER FED. R. CIV. P. 4(I)

The Court should dismiss Plaintiffs' Motion as premature because they failed to serve FDIC-R and subject it to the Court's jurisdiction. Fed. R. Civ. P. 4(i)(1), titled "Serving the United States and Its Agencies, Corporations, Officers, or Employees," provides the proper method to obtain service. The FDIC, in any capacity, is an agency of the United States. 12 U.S.C. § 1819(b)(1). To properly serve the FDIC, a party must send a copy to the United States Attorney in the district where the action was brought, a copy to the Attorney General of the United States, as well as to the FDIC's proper agent. *See* Fed. R. Civ. P. 4(i)(1). The clerk's docket reflects Plaintiffs have failed to serve any of these entities or even issue a Summons for two of the required entities.

On December 13, 2023, the FDIC-R confirmed that as of December 12, 2023, only the Summons issued by the Court clerk on December 6, 2023, has been served by mail upon one of the FDIC-R's designated agent for service of process. No other pleading or the Court's standing order has been served upon an FDIC designated agent. Yet, the FDIC's website, at https://www.fdic.gov/contact/agents-for-service-of-process/index.html early and concisely notifies the public of who the FDIC has designated as authorized agents to accept service of process and how that service must be made pursuant to Fed. R. Civ. P. 4(i).

More specifically, by docket entry on December 6, 2023, the Court instructed Plaintiffs to serve the Summons, Complaint, the Court's standing orders, and all other new case documents upon the Defendant FDIC-R. DE 6. But the Plaintiffs have failed to file a Proof of Service reflecting service of any of the initial pleadings documents in this case upon the FDIC-R, let alone the additional items that the Court directed them to serve.

On December 7, 2023, the Court directed Plaintiffs' counsel to file a statement (with documentation) that Defendant was served with a copy of the Motion. Instead, in response, on December 7, 2023, the Plaintiffs filed a Statement of Confirmation of Notice of Plaintiffs' Motion, advising that counsel for Plaintiffs spoke to an attorney in the Dallas Regional Office of the FDIC,

*who was not authorized to accept service of process for the FDIC,* advising that Plaintiffs were filing a Motion for TRO and would send the FDIC-R's employee a copy of the Complaint and Motion. This is not suffice for proper service.

Neither in the Motion, nor in any accompanying exhibits or declarations have Plaintiffs explained why they failed to properly serve the FDIC-R or other required entities pursuant to Fed. R. Civ. P. 4(i). As a result, the FDIC is not yet a proper party to this action. And, in this case, no emergency exists that merits entering extraordinary relief against a party that has not been properly served. Consequently, the Court lacks jurisdiction over the Defendant and should deny Plaintiffs' motion as premature and improperly filed.

### III. THE COURT IS STATUTORILY PROHIBITED BY 12 U.S.C. § 1821(j) FROM ISSUING EQUITABLE RELIEF ENJOINING, RESTRAINING, OR AFFECTING THE FDIC IN THE EXERCISE OF ITS POWERS AND DUTIES AS A RECEIVER

Congress granted the FDIC express statutory authority to, *inter alia,* take over, preserve and conserve assets of a failed depository institution, 12 U.S.C. § 1821(d)(2)(B), pay all of its valid obligations, 12 U.S.C. § 1821(d)(2)(H), liquidate the institution, 12 U.S.C. § 1821(c)(13)(B), dispose of its assets, 12 U.S.C. § 1821(d)(2)(E) & (d)(13)(E), and determine and pay all claims against the institution approved by the Receiver, 12 U.S.C. § 1821(d)(3)-(11). Congress also granted the FDIC special statutory powers and defenses in litigation, such as the ability to request stays, or suspensions, of litigation which courts must grant, 12 U.S.C. § 1821(d)(12), attach and place assets under the control of the court or an appointed Trustee, 12 U.S.C. § 1821(d)(18), authority to disaffirm or repudiate any contract or lease, 12 U.S.C. § 1821(e), and to pay the insured deposits of each depositor of a failed institution, 12 U.S.C. § 1821(f).

Congress withdrew any court's authority to restrain the FDIC in the performance of its receivership powers and functions. Specifically, 12 U.S.C. § 1821(j), titled "Limitation on court action," provides:

> "Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver."

In other words, § 1821(j) prohibits a Court from issuing an injunction against a Receiver that would restrain or affect the exercise of the FDIC-R's powers or functions, or interfere with the FDIC-R's duties to administer, wind up and liquidate the affairs or assets of a failed depository institution. *Volges v. Resolution Trust Corp.*, 32 F.3d 50, 52 (2d Cir. 1994); accord *Sahni v. American Diversified Partners*, 83 F.3d 1054, 1058 (9th Cir. 1996) ("Essential to these enumerated powers [in FIRREA] is [the] FDIC's ability to carry out its basic functions as a receiver free from judicial restraint, pursuant to 12 U.S.C. § 1821(j)").

Courts have applied the anti-injunction provision of 12 U.S.C. § 1821(j) broadly, and are limited only to an analysis of whether the FDIC-R was exercising statutory powers and authorities granted to it. For example, in *Gross v Bell Sav. Bank PA SA*, 974 F.2d 403, 405–08 (3d Cir. 1992),[3] the Third Circuit held that § 1821(j) barred the district court from issuing an injunction requiring the FDIC to distribute funds from a failed bank's pension and profit-sharing plans, even though plaintiffs alleged that the withholding of the funds was a breach of fiduciary duty under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, et seq. 974 F.2d at 405, 408.

In *Bank of America Nat. Ass'n v. Colonial Bank,* 604 F.3d 1239 (11th Cir. 2010), the FDIC-R took over assets in the possession of Colonial Bank, including thousands of mortgage loans and their proceeds, allegedly valued in excess of $1 billion. Bank of America, claiming that it was the legal owner of the loans and proceeds, filed suit, seeking a temporary restraining order and preliminary injunction prohibiting Colonial Bank (and after it failed, the FDIC as its Receiver) from taking any action with respect to the disputed mortgage loan proceeds. The district court granted

---

[3] In *Gross*, the plaintiffs, high-ranking officers of the failed bank, held deposits totaling $500,000 in funds in the failed bank's pension and profit-sharing plans. The FDIC-R subsequently gave notice that it intended to terminate the pension and profit-sharing plans, and in response, plaintiffs attempted to withdraw their deposits. The FDIC-R refused to distribute the funds, because it was investigating the plaintiffs for their role in the bank's failure. The Third Circuit held that FDIC-R "was acting within its legitimate authority in withholding the [plaintiffs'] deposits, whether we characterize the [FDIC-R's] action as withholding deposits pending determination of a liability to the bank or as taking measures to preserve and conserve the assets of the institution." *Gross*, 974 F.2d at 408. Because the FDIC-R's action was taken pursuant to its powers as receiver, judicial restraint of those powers was inappropriate. *Id*.

injunctive relief, finding that the FDIC-R had exceeded its statutory powers when it took control of the disputed loan proceeds. 604 F.3d at 1243. On appeal, the Eleventh Circuit reversed and dissolved the preliminary injunction, holding unequivocally that the plain language of § 1821(j) "<u>clearly and unambiguously reflects congressional intent to bar courts from granting the precise type of injunctive relief sought here so long as the receiver is not acting in some capacity other than receiver or conservator or attempting to exercise powers and functions beyond those granted by FIRREA</u>." *Id*. at 1244.[4] (emphasis added).

In so holding, the Eleventh Circuit declined to recognize a "non-owned assets" exception to § 1821(j), noting that there is no such limiting language in the statute, and the FDIC-R has express authority to transfer custodial assets and liabilities associated with any trust business. *Id*. at 1244–45; *see also Ward v. RTC*, 796 F. Supp. 256, 258 (S.D. Tex. 1992) (pursuant to § 1821(j) the "receiver was free to perform its functions, which included the liquidation of receivership assets, without being encumbered by the possibility of injunctive actions"); *Rosa v. Resolution Trust Corp*., 938 F.2d 383, 399–400 (3d Cir. 1991) (reversing a preliminary injunction that had been based on the [Receiver's] alleged wrongful actions with respect to a pension); *Joint Venture v. Onion*, 938 F.2d 35, 39 (5th Cir. 1991) ("the courts lack the ability to enjoin" the receiver regarding foreclosure of an asset of the estate); *Telematics Int'l, Inc. v. NEMLC Leasing Corp*., 967 F.2d 703, 707 (1st Cir. 1992) ("[t]o enable the FDIC to move quickly and without undue interruption to preserve and consolidate the assets of the failed institution, Congress enacted a broad limit [12 U.S.C. § 1821(j)] on the power of the courts to interfere with the FDIC's efforts . . . ."); *In re Landmark Land Co*., 973 F.2d 283, 290 (4th Cir. 1992) ("[t]he comprehensive scheme of FIRREA indicates Congress' intent to allow the [receiver] full rein to exercise its statutory authority without injunctive restraints imposed by bankruptcy courts or district courts"); *Costa v. RTC*, 789 F. Supp. 43, 44 (D. Mass. 1991) (holding that a court is precluded by statute from granting injunctive relief). Most courts have found that the

---

[4] This simple analysis–whether a court's action would restrain or affect the FDIC-R's exercise of a power or function–remains unaltered by allegations that the FDIC-R is somehow acting wrongfully. 12 U.S.C. § 1821(j) "bar[s] judicial intervention whenever the FDIC is acting in its capacity as a receiver or conservator, even if it violates its own procedures or behaves unlawfully in doing so." *Bank of America*, 604 F.3d at 1243. "Therefore, our jurisdictional inquiry under § 1821(j) is quite narrow." *Id*.

6

**DEFENDANT FDIC's OPPOSITION TO MOTION FOR TRO - 4:23-cv-06296-HSG**

FDIC's protected powers are to be construed broadly and that § 1821(j) is not subject to judicially created exceptions. *See, e.g., Sahni*, 83 F.3d at 1058; *Telematics Int'l, Inc.*, 967 F.2d at 707; *Bursick v. One Fourth St. N., Ltd.*, 84 F.3d 1395, 1397 (11th Cir. 1996).

Accordingly, § 1821(j) strips the Court in this case of authority to issue a TRO, preliminary injunction or other equitable relief enjoining the FDIC-R's administration or liquidation of the receivership estate. Plaintiffs' Motion should be denied.

## IV. PLAINTIFFS REALLY JUST WANT CASH, AND THAT REMEDY PRECLUDES EXTRAORDINARY RELIEF

Plaintiffs seek recovery of their deferred compensation in cash. They do not like having been paid in full via RCs. But recovery of cash, or allegations for change in priority status under FIRREA, is not grounds for the issuance of a freeze or constructive trust on FDIC receivership assets. Notwithstanding the anti-injunction statute, claims for cash relief usually fail to meet the high bar for issuance of a TRO or injunction. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022). Even if their claim had merit, it is a claim that may be remedied in the normal course of due process, without extraordinary relief. Finally, Plaintiffs fail in their Motion to prove each element necessary for injunctive relief.

### A. Plaintiffs Cannot Show a Likelihood of Success on the Merits

Generally, rabbi trusts have the unique quality that their assets, upon dissolution, may be subject to the creditors of the business that created the trust. Not only is this situation common in the non-banking bankruptcy circumstance, but several courts have applied this general principle to failed bank receiverships as well. Courts across the country have specifically ruled that the FDIC may repudiate deferred compensation plans that involve rabbi trusts, and that the assets held in the rabbi trusts are subject to the institutions' creditors. *See, e.g., Westport Bank & Trust Co. v. Geraghty*, 90 F.3d 661, 669 (2d Cir. 1999) (FDIC in its capacity as receiver could repudiate deferred compensation arrangement held in rabbi trust) citing *Resolution Trust Corp. v. MacKenzie*, 60 F.3d 972, 977 (2d Cir. 1995) (ruling that receiver was entitled to trust assets, not participants of deferred compensation plans); *Maher v. FDIC*, 441 F.3d 522, 526 (7th Cir. 2006) ("beneficiaries of a rabbi trust established by a thrift are unsecured creditors of the thrift; the receiver is entitled to the trust assets") (internal

citations omitted); *Mcallister v. Resolution Trust Corp.*, 201 F. 3d 570, 579 (5th Cir. 2000) ("2000)("the recipients of grantor or 'rabbi' trusts are unsecured creditors" and "the leading cases concerning grantor trusts in bank liquidations all hold that the trust funds are available to general creditors and depositors of the bank") (collecting cases); *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993); *Cortina v. Sorvan Bank*, *N.A.*, 927 F. Supp. 439, 448 (S.D. Fla. 1994) (rabbi trust assets reverted to the receiver for defunct bank).[5]

Nevertheless, Plaintiffs assert two erroneous claims that they are likely to succeed on the merits. First, they contend that the language of the Rabbi Trust Agreement (which they do not cite to or attach) makes clear that the principal and earnings of the Rabbi Trust are to be held for the exclusive benefit of the Plan participants and therefore Plaintiffs have rights as Rabbi Trust beneficiaries rather than as general, unsecured creditors. Motion at 11. Plaintiffs however have failed to present reference to the Plan, the Rabbi Trust Agreement or a cite to anything therein to evidence that the participants' rights are secured. Second, Plaintiffs claim that by administering the Rabbi Trust and its assets for the benefit of the receivership estate, the FDIC-R has obtained "wrongful dominion" according to California state law, which warrants a conversion and constructive trust claim. Motion at 11–12. Plaintiffs however fail to cite a single case that trumps the vast federal authority cited herein authorizing the FDIC-R to exercise dominion and control over all of the failed bank's assets, including the Rabbi Trust.

---

[5] Plaintiffs speculate that COLI policies are an "asset" of the Rabbi Trust and have been segregated for their benefit as participants of the Plan, thereby granting them a legal right of ownership to the policies. Motion at 12–13. This unfounded theory (unfounded, because Plaintiffs do not produce or refer to any specific Plan document to support the theory) conflicts with the fundamental legal relationships under the Plan and Rabbi Trust. Courts that have addressed this issue, have determined that rabbi trust arrangements are commonly funded through COLI policies, which in order for the plan to maintain its unfunded status are owned by the employer, not the employee participants. *See e.g., Colburn v. Hickory Springs Mfg. Co.*, 448 F. Supp. 3d 512, 523 (E.D.N.C. 2020) (participants did not have a greater legal right to COLI insurance proceeds than that of an unsecured creditor, thus the plan was unfunded as a matter of law) (collecting similar cases).

### B. Plaintiffs Have Been Paid in Full, They Just Don't Like the Payment Method

Payment of Plaintiffs' deferred compensation wages by way of a RC is legal payment in full and the legal equivalent of being paid in cash. *See e.g., Battista,* 95 F.3d at 1113; *Resolution Trust Corp. v. Titan Fin. Corp.*, 36 F.3d 891, 892 (9th Cir. 1994); *Franklin Bank v. FDIC*, 850 F. Supp. 845, 849 (N.D. Cal. 1994). Since Plaintiffs' claims have been paid in full by RCs, as a matter of law, they cannot now seek a double recovery in the form of payment of those same wages from the Rabbi Trust assets, or the COLI (assuming they could prevail on their allegations).

Plaintiffs' attempt to gain control of the assets in the Rabbi Trust and thereby skip the line of FRB receivership creditors that are either ahead of them in priority or equal to them in seniority for payment. Under FIRREA's depositor preference distribution hierarchy, however, the Plaintiffs have failed to present facts or law to establish they are entitled to payment as anything other than an unsecured creditor. 12 U.S.C. § 1821(d)(11). Plaintiffs would have the Court change the unsecured portions of their claims into secured claims based on their erroneous assertion against the assets in the Rabbi Trust, notwithstanding their own admission to the defect in their claims that they never perfected their security interests in the COLI policies that are held as assets of the Rabbi Trust (Compl. ¶ 1; Motion at 4; Declaration of Michael Harrington (DE 3-1, "Harrington Decl.") ¶ 7 (discussed in further detail *infra*). Even Mr. Harrington admits in his declaration that the Plaintiffs' interest in the Rabbi Trust, including any assets therein, is unsecured. Motion at 4–5, 8–10, 12–14.

At this time in the litigation, and without FDIC-R having any opportunity to address the individual circumstance and claim of each of the 169 plaintiffs, this Court should ignore the Plaintiffs' attempts to unfairly jump ahead of the creditors' line and seize assets of the receivership estate that they otherwise have no ability to receive.

Furthermore, Plaintiffs fail to prove their right to extraordinary relief by admitting that their alleged injury, if any, is completely monetary in nature. Plaintiffs seek cash payment(s) from the FDIC-R's assets or liquidation of assets that they are not entitled to receive. Compl. at ¶¶ 36–37, 39, 44, 50, 52. "Monetary injury is not normally considered irreparable [harm]." *hiQ Labs, Inc.*, 31 F.4th at 1188. "The possibility that adequate compensatory or other corrective relief will be available at a

later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). "An injury is not irreparable if it can be compensated by the court when, and if, the plaintiff prevails on the merits. Stated differently, only harm that the district court cannot remedy following a final determination on the merits may constitute irreparable harm." *Qualcomm Inc. v. Compal Elecs., Inc.*, 283 F. Supp. 3d 905, 915 (S.D. Cal. 2017) (internal quotation marks and citation omitted).

For this case, Plaintiffs, should they obtain judgment at the end of the litigation, would be able to recover from FDIC-R in cash. Cash is fungible. There is nothing unique about the cash/assets in the Rabbi Trust as compared to the other receivership assets. FDIC-R, if ordered to do so, may pay judgments from the receivership assets at its discretion. Therefore, because Plaintiffs fundamentally seek monetary relief in the Motion, and because cash is not a unique asset, the Plaintiffs cannot show risk of irreparable harm. Complaining that the source of funds they might otherwise be paid from can somehow injure or prejudice the Plaintiffs is a trophy sized red herring.

### C. The Balance of Equities with Respect to the Public Interest Tips in Favor of FDIC-R, and All of the Creditors Who Would Be Harmed by Plaintiffs Skipping the Priority Line

The FRB receivership is somewhat unique in that it was the second largest bank failure to occur in the history of the United States. Consequently, it also has one of the largest creditor and claimant pools in the history of FDIC receiverships. The multitude of creditors and claimants competing with the Plaintiffs for limited estate assets would be prejudiced by the Plaintiffs' unfounded request for the others' statutorily allotted share. Furthermore, creditors of this receivership would be harmed if Plaintiffs were effectively granted a preference over depositors and other general unsecured creditors by deviating from the explicit FIRREA distribution scheme set out in 12 U.S.C. § 1821(d)(11).

The public at large has a significant interest in upholding the provisions of FIRREA and permitting the FDIC to fulfill its statutory obligations.

Consequently, the balance of equities weighs heavily in favor of the FDIC-R with respect to the public interest, especially where, as here, Plaintiffs have asserted that the public interest in an

order enjoining the FDIC-R is nothing more than, or synonymous with, the interests of these particular Plaintiffs, as opposed to the public at large.[6] The public interest in the balance of equities favors uniform application of the law and allowing the FDIC-R to carry out the duties that it has been legally charged with fulfilling unimpeded by claimants like the Plaintiffs, who seek more than they are legally entitled at the expense of other similarly situated claimants.

## V. PLAINTIFFS' REQUEST FOR EXPEDITED DISCOVERY IS MOOT BECAUSE THE COURT IS PROHIBITED FROM ORDERING THE REQUESTED INJUNCTIVE RELIEF

Expedited discovery is not automatically granted merely because a party seeks a preliminary injunction. *American Legalnet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009). A court may properly deny a motion for expedited discovery where a plaintiff seeks discovery that is not "narrowly tailored to obtain information relevant to a preliminary injunction determination and instead goes to the merits of plaintiff's claims in this action." *Id.* at 1069. Further, the party seeking expedited discovery must make a prima facie case for the need for expedited discovery and show good cause. *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275–76 (N.D. Cal. 2002); *TGG Mgmt. Co. v. Petraglia*, No. 19-2007, 2019 WL 6310556, at *2 (S.D. Cal. Nov. 25, 2019).

In the instant case, Plaintiffs seek general discovery on a very broad topic: their "understanding all aspects that relate to assets held in that Trust." Motion at 16. No facts are set forth in the Motion as to why this general and expansive discovery is needed immediately, particularly on an extraordinary-expedited basis, when the same is typically reserved for and can easily be handled by the normal discovery processes and evidence rules when the proper time comes.

Irrespective of the assertions in the Motion, this Court should deny Plaintiffs' request for expedited discovery because the request is contingent on the Court granting an restraining order that violates the anti-injunction bar of 12 U.S.C. §1821(j). The need for expedited or emergency discovery

---

[6] Plaintiffs' public interest arguments that the general public has an interest in receiving their wages is completely irrelevant to the instant case. *See* Motion at 14–15. Plaintiffs bargained for a unique deferred compensation arrangement with FRB, therefore, this is not a case involving, for example *actions by a municipality to reduce the wages of the general public. See id.* at 14 citing *Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 412 (9th Cir 2015) (denying request for a preliminary injunction against city of Seattle because it would likely result in many workers receiving reduced wages).

to support an otherwise illegal and unobtainable restraint against the receivership duties of the FDIC-R is both unnecessary and moot. If this case proceeds that far, the FDIC-R will cooperate in the discovery process, including in its obligations to meet and confer in the time frame specified in the Federal Rules, but we are not there yet.

## VI. CONCLUSION

Nothing about this case demands, necessitates, or authorizes the extraordinary relief sought by the Plaintiffs. A temporary restraining order or preliminary injunction ordinarily will not be granted if any debate or doubts are created by the record as to the merits of the claimed relief or the power of the court to act. *Fowler v. United States*, 258 F. Supp. 638, 644 (C.D. Cal. 1966). Here, the Court lacks authority to grant a TRO under 12 U.S.C. § 1821(j). Even if the Court had the authority, Plaintiffs have not met the requirements for a TRO. Lastly, expedited discovery, premised on a need to establish likelihood of success on the merits of Plaintiffs' injunctive relief is moot because that relief cannot be granted. Accordingly, the Court should deny the Plaintiffs' motion in its entirety as premature and legally improper.

DATED: December 14, 2023                Respectfully submitted,

**THE WAGNER LAW GROUP, P.C.**

*/s/ Joseph A. Garofolo*
JOSEPH A. GAROFOLO (SBN 214614)
315 Montgomery Street, Suite 900
San Francisco, CA 94104
Phone: 415-625-0002
Fax: 415-358-8300
Email: jgarofolo@wagnerlawgroup.com

THOMAS E. CLARK, JR. (*pro hac vice* forthcoming)
125 High Street, Oliver Street Tower, 5th Floor
Boston, MA 02110
Phone: 314-236-0065
Fax: 314-236-5743
Email: tclark@wagnerlawgroup.com

Specially Appearing for Defendant, the FDIC as Receiver for First Republic Bank