1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    MICHAEL J HARRINGTON, et al.,            Case No. 23-cv-06296-HSG

8                    Plaintiffs,              **ORDER DENYING PLAINTIFFS'**
                                              **APPLICATION FOR A TEMPORARY**
9           v.                                **RESTRAINING ORDER**

10   FEDERAL DEPOSIT INSURANCE                Re: Dkt. No. 3
     CORPORATION,
11
                     Defendant.
12

13          Pending before the Court is Plaintiffs' application for a temporary restraining order.  Dkt.

14   No. 3.  The Court finds this matter appropriate for disposition without oral argument and the

15   matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons detailed below, the Court

16   **DENIES** the application.

17   **I.     BACKGROUND**

18          On December 5, 2023, Plaintiffs – a group of former employees of First Republic Bank

19   ("FRB") who represent that they constitute a majority of the participants in FRB's Deferred

20   Compensation Plan – filed a complaint against the Federal Deposit Insurance Corporation

21   ("FDIC" or "Defendant").  *See generally* Dkt. No. 1 ("Compl.").  In their complaint, Plaintiffs

22   allege that the FDIC, in its capacity as FRB Receiver, has unlawfully "relegated the Plaintiffs to

23   wholly unsecured creditor status" and deprived them of the assets from the Non-Qualified

24   Deferred Compensation Plan Trust ("Rabbi Trust" or "Trust") into which they contributed, and the

25   company owned life insurance ("COLI") accounts within the Rabbi Trust.  *Id.* ¶¶ 1, 6.  Plaintiffs

26   maintain that they are entitled to "the specifically earmarked assets" from the Rabbi Trust, but

27   represent that the FDIC wrongfully stopped issuing Trust payments in May 2023 and has refused

28   to "turn over the Rabbi Trust assets to the Plaintiffs."  *Id.* ¶¶ 1, 4, 25.  Further, they allege that

*United States District Court*
*Northern District of California*

FDIC's treatment of their claims as unsecured rather than secured will lead to dire financial consequences, since "it is expected that general unsecured claimants will recover little, if anything, on account of their claims." *Id*. ¶ 4, 28.

Based on these facts, Plaintiffs bring causes of action for (1) quiet title (Cal. Civ. Proc. Code § 760.010 *et seq*.); (2) conversion; (3) constructive trust (Cal. Civ. Code §§ 2223 & 2224); and (4) preliminary injunctive relief prohibiting Defendant from using the Rabbi Trust assets and directing Defendant to expeditiously turn over the Rabbi Trust assets to Plaintiffs. *Id*. ¶¶ 38–53. Plaintiffs also request a judgment under 28 U.S.C. §§ 2201 and 2202 declaring that "(A) the Plaintiffs are entitled to recover directly, from the proceeds of the assets in possession of that certain Trust including, without limitation, any proceeds of the COLI that are in possession of the Rabbi Trust, and (B) the Receiver lacks rights to utilize the Rabbi Trust proceeds from the COLI to pay other general unsecured creditors, as such rights to recovery should inure to the Deferred Compensation Plan participants (including the Plaintiffs)." *Id*. ¶¶ 32–37.

Also on December 5, 2023, Plaintiffs filed an application for a temporary restraining order. *See generally* Dkt. No. 3 ("TRO"). Largely reprising material from their complaint, Plaintiffs argue that such emergency relief is necessary at the outset of this litigation because Defendant may attempt to dissipate the Rabbi Trust assets – which are "a significant and crucial source of income for participants of the Plan" – "at any time." *Id*. at 9. By their motion, Plaintiffs seek entry of "(1) a temporary restraining order, and at such later date as the Court may schedule, a preliminary injunction prohibiting the Defendant from engaging in any transfer, sale, liquidation, or other disposition of any Rabbi Trust assets and to either (A) direct[] the Defendant to expeditiously turn over the Rabbi Trust assets or (B) for the Court [to] impose a constructive trust over the Rabbi Trust assets; (2) an order to show cause why a preliminary injunction should not issue; and (3) an order granting the Plaintiffs leave to conduct expedited discovery." *Id*. at 9–10. Defendant opposes the requested issuance of a TRO. *See* Dkt. No. 16 ("Opp.").

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, a temporary restraining order may enjoin conduct pending a hearing on a preliminary injunction. *See* Fed. R. Civ. P. 65(b). The standard

United States District Court
Northern District of California

for issuing a temporary restraining order and issuing a preliminary injunction are substantially identical. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839, n.7 (9th Cir. 2001). A plaintiff seeking preliminary relief must establish: (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Preliminary relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. A court must find that "a certain threshold showing" is made on each of the four required elements. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Under the Ninth Circuit's sliding scale approach, a preliminary injunction may issue if there are "serious questions going to the merits" if "a hardship balance [also] tips sharply towards the [movant]," and "so long as the [movant] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## III.   DISCUSSION

The Court declines to grant the "extraordinary remedy" of a TRO in Plaintiffs' favor. *Winter*, 555 U.S. at 22. First, Plaintiffs have not shown that their claim is likely to succeed on the merits. As Defendant points out, a statutory provision of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") that governs the FDIC appears likely to bar the relief Plaintiffs seek from this Court. Opp. at 10–13. Specifically, Defendant argues that a Court cannot enjoin the FDIC in its capacity as receiver based on the language of 12 U.S.C. § 1821(j), a section titled "Limitation on court action":

> "Except as in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver."

12 U.S.C. § 1821(j). Defendant cites a variety of cases from across the country demonstrating the operation of this "anti-injunction" provision. Opp. at 10–13. For the first time in their reply, Plaintiffs argue that "relevant exceptions to 12 U.S.C. section 1821(j)" exist, citing to a Ninth Circuit case. Dkt. No. 18 at 6–7 (citing *Abbott Bldg. Corp. v. United States*, 951 F.2d 191 (9th

3

Cir. 1991)).  But *Abbott* does not support Plaintiffs' suggestion that the statutory bar Defendant cites is not applicable in this FDIC receivership context.  That case concerned the court's subject matter jurisdiction to even hear the plaintiff's action against the FDIC, where the dispute focused on a third party's claim that its property was improperly deeded to the receiver through foreclosure.  *See Abbott*, 951 F.2d at 195 ("[W]e do not mean to establish the overly simple proposition that every time a party claims that a receiver has done an act in an improper manner adjudication can have no effect upon the exercise of powers of the receiver.  That would be an overly broad exception, which would enable any clever pleader to swallow up the [predecessor] statute [to section 1821(j)] at will.  We simply hold that when [the FDIC's predecessor agency] purports to have acquired the property of another through a foreclosure under the provisions of state law, the courts have jurisdiction to decide whether that law was indeed followed.") (citation omitted).

By contrast, here Plaintiffs' TRO request directly challenges the FDIC's handling of core receivership assets (i.e., the Rabbi Trust formed by FRB itself), and asks the Court to order those assets distributed or taken under constructive trust.  It is far from self-evident that the principle stated by the Ninth Circuit in *Abbott* in a very different factual and legal context could justify the sort of frontal attack here, which appears to be exactly the type of claim squarely precluded by section 1821(j).  *See Sahni v. Amer. Diversified Partners*, 83 F.3d 1054, 1059-60 (9th Cir. 1996) (explaining that "courts have applied § 1821(j) to insulate the actions of the FDIC as receiver from restraint, even where the receiver is alleged to have violated state law and equitable remedies are available").  So because Plaintiffs seek an injunction that appears to be facially barred by FIRREA without showing that some exception applies, the Court cannot find that they have met their burden of showing that they are likely to succeed on their claims.  While FIRREA is not the only factor undermining that likelihood of success, because it is a central threshold issue, the Court need not address Defendant's other arguments at this juncture.

In addition, even under the "sliding scale" test, the Court's conclusion that Plaintiffs have not shown a likelihood of success on the merits is not outweighed by its assessment of the potential harm to Plaintiffs or its balancing of the equities.  While Plaintiffs aver that disbursement

of the Rabbi Trust assets can happen at "any time," the fact that Plaintiffs filed their suit several months after affected individuals began receiving claim letters from the Receiver at least somewhat undercuts the urgency Plaintiffs now plead.  And other than general predictions about receiving just "pennies on the dollar," TRO at 16, Plaintiffs have not shown that the delta between the Plaintiffs' expected financial returns from the Rabbi Trust and their actual returns from the FDIC's claims process is significantly injurious.  Further, and as both parties emphasize, FRB's failure was the second largest bank failure in U.S. history, generating what the FDIC characterizes as "one of the largest creditor and claimant pools in the history of FDIC receiverships."  TRO at 12; Opp. at 16.  As the FDIC manages the sprawling fallout from FRB's collapse, the Court recognizes a significant public interest in "upholding the provisions of FIRREA and permitting the FDIC to fulfill its statutory obligations." Opp. at 16.  Ultimately, given the substantial interests implicated across multiple dimensions in this case, the Court does not find that the balance of hardships tips sharply in Plaintiffs' favor.

## IV.    CONCLUSION

Accordingly, the Court **DENIES** Plaintiffs' application for a temporary restraining order, Dkt. No. 3, as well as Plaintiffs' related request for expedited discovery.[1]

**IT IS SO ORDERED.**

Dated:    12/21/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[1] The Court observes that based on Plaintiffs' Reply (Dkt. No. 18), it appears that Plaintiffs have effectuated service in accordance with Rule 4(i), resolving any potential service issue.