United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J HARRINGTON, et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>      Defendant. | Case No. 23-cv-06296-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 28 |

Pending before the Court is Defendant Federal Deposit Insurance Corporation's motion to dismiss.  Dkt. No. 28.  The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons discussed below, the Court will **GRANT** the motion.

## I.  BACKGROUND

On December 5, 2023, Plaintiffs – a group of former First Republic Bank ("FRB") employees who represent that they constitute a majority of the participants in FRB's Deferred Compensation Plan – filed a complaint against the Federal Deposit Insurance Corporation ("FDIC-R" or "Defendant") in its capacity as FRB receiver.  *See generally* Dkt. No. 1 ("Compl.").  In their complaint, Plaintiffs allege that the FDIC-R unlawfully "relegated the Plaintiffs to wholly unsecured creditor status" and deprived them of the assets from the Non-Qualified Deferred Compensation Plan Trust ("Rabbi Trust" or "Trust") into which they contributed, and the company owned life insurance ("COLI") accounts within the Rabbi Trust.  *Id.* ¶¶ 1, 6.  Plaintiffs maintain that they are entitled to "the specifically earmarked assets" from the Rabbi Trust, but allege that the FDIC wrongfully stopped issuing Trust payments in May 2023 and has refused to "turn over the Rabbi Trust assets to the Plaintiffs."  *Id.* ¶¶ 1, 4, 25.  Plaintiffs also allege that the

1   FDIC-R's treatment of their claims as unsecured rather than secured will lead to dire financial

2   consequences, since "it is expected that general unsecured claimants will recover little, if anything,

3   on account of their claims."  *Id*. ¶¶ 4, 28.

4         Based on these facts, Plaintiffs bring causes of action for (1) quiet title (Cal. Civ. Proc.

5   Code § 760.010 et seq.); (2) conversion; (3) constructive trust (Cal. Civ. Code §§ 2223 & 2224);

6   and (4) preliminary injunctive relief prohibiting Defendant from using the Rabbi Trust assets and

7   directing Defendant to expeditiously turn over the Rabbi Trust assets to Plaintiffs.  *See id*. ¶¶ 38–

8   53.  Plaintiffs also request a judgment under 28 U.S.C. §§ 2201 and 2202 declaring that "(A) the

9   Plaintiffs are entitled to recover directly, from the proceeds of the assets in possession of that

10  certain Trust including, without limitation, any proceeds of the COLI that are in possession of the

11  Rabbi Trust, and (B) the Receiver lacks rights to utilize the Rabbi Trust proceeds from the COLI

12  to pay other general unsecured creditors, as such rights to recovery should inure to the Deferred

13  Compensation Plan participants (including the Plaintiffs)."  *Id*. ¶¶ 32–36.

14        In conjunction with their complaint, Plaintiffs filed a motion for a temporary restraining

15  order, which was then briefed.  *See* Dkt. Nos. 3 ("TRO Mot."), 16 ("TRO Opp."), 18 ("TRO

16  Reply").  The Court ultimately denied the motion, citing the long odds Plaintiffs faced in

17  prevailing on their claim given the probable jurisdictional bar imposed by the Financial

18  Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73,

19  103 Stat. 183 (1989) (codified at 21 U.S.C. 1821).  *See* Dkt. No. 20 at 3, 5.[1]  On February 13,

20  2024, Defendant filed a motion to dismiss, arguing that dismissal with prejudice was warranted in

21  light of, among other reasons, the jurisdictional concerns cited by the Court in its order denying

22  the TRO.  *See* Dkt. No. 28 ("MTD").  Plaintiffs opposed the motion on March 19, *see* Dkt. No. 32

23  ("MTD Opp."), and Defendant replied on April 12, *see* Dkt. No. 34 ("MTD Reply").  The motion

24  is now ripe for disposition.[2]

25

26

27  [1] For ease of reference, the Court refers to the PDF pages rather than the document's internal
    pagination unless otherwise noted.

28  [2] Discovery has been stayed in this case since the Court granted Defendant's motion for that relief
    on May 29, 2024.  *See* Dkt. No. 43.

United States District Court
Northern District of California

## II.    LEGAL STANDARD

A motion under Rule 12(b)(1) challenges the grounds for the Court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  On a Rule 12(b)(1) motion, the Court assumes the truth of the complaint's allegations unless they are contested, in which case the party invoking jurisdiction must submit evidence to satisfy its burden of establishing jurisdiction.  *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021); *Nation v. Trump*, 395 F. Supp. 3d 1271, 1274 (N.D. Cal. 2019).

## III.    DISCUSSION

Defendant's core contention is that FIRREA, which "grant[s] the FDIC authority to act as receiver for failed financial institutions and special powers to carry out its receivership functions," forecloses this Court's consideration of Plaintiffs' claims for declaratory and equitable relief.  MTD at 18–19.  The Court agrees.

In identifying FIRREA's limits on this Court's jurisdiction, Defendant points first to 12 U.S.C. § 1821(j), which provides that "no court may take any action, except at the request of the [FDIC] by regulation or order, to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver."  Congress' purpose in enacting section 1821(j) was "to permit the FDIC to perform its duties as conservator or receiver promptly and effectively without judicial interference."  *Hindes v. FDIC*, 137 F.3d 148, 160 (3d Cir. 1998).  As a result, so long as the FDIC has not "acted or proposed to act beyond, or contrary to, its statutorily prescribed, constitutionally permitted, powers or functions," section 1821(j) "does indeed bar courts from restraining or affecting the exercise of powers or functions of the FDIC as a conservator or a receiver."  *National Trust for Historic Preservation v. FDIC*, 21 F.3d 469, 471-72 (D.C. Cir.) (Wald, J., concurring) (internal quotation and citation omitted), *cert. denied*, 513 U.S. 1065 (1994.  Courts have accordingly interpreted this "anti-injunction" provision as "a sweeping ouster of courts' power to grant equitable remedies," barring all "nonmonetary" remedies against the FDIC as receiver, including injunctive and declaratory relief.  *Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995); *see also Sharpe v. F.D.I.C.*, 126 F.3d 1147, 1154 (9th Cir. 1997) ("Section 1821(j) prevents courts from granting any equitable relief against the FDIC[.]"); *Sahni v. Am.*

3

*Diversified Partners*, 83 F.3d 1054, 1058 (9th Cir. 1996), *as amended* (July 24, 1996) ("It is well-established that § 1821(j) bars restraint by the courts on the statutory powers of the FDIC when it acts as receiver.").

In terms of remedies, Plaintiffs in this case seek a declaratory judgment, a determination of quiet title, the imposition of a constructive trust, and a preliminary injunction "prohibit[ing] Defendant from using the Rabbi Trust assets (including . . . the COLI and proceeds therefrom) and directing the Defendant to expeditiously turn over the Rabbi Trust assets to Plaintiffs."  Compl. ¶ 1.  In other words, Plaintiffs seek exclusively equitable remedies.[3]  *See* Compl. ¶ 53.  In evaluating its ability to hear such a suit given the jurisdictional constraints imposed by section 1821(j), the Court must ask: (1) is the FDIC-R acting in its capacity as receiver in a manner consistent with its "statutorily prescribed, constitutionally permitted, powers or functions?"; and, if it is, (2) would the remedies Plaintiffs seek "restrain or affect the exercise of powers or functions of the FDIC"?  The answer to both questions here is "yes," with the result that the Court lacks jurisdiction over this lawsuit.

It is undisputed that Defendant FDIC-R is acting as receiver to First Republic Bank, and that Plaintiffs' claims proceed against it in its receivership capacity.  Accordingly, the FDIC-R is authorized by statute to exercise "all rights, titles, powers, and privileges of [First Republic Bank] . . . with respect to . . . the assets of the institution."  12 U.S.C. § 1821(d)(2)(A)(i).  This includes the ability to "take over [its] assets," *id*. § 1821(d)(2)(B)(i), to "preserve and conserve [its] assets," *id*. § 1821(d)(2)(B)(iv), to liquidate and "proceed to realize upon [its] assets," *id*. § 1821(d)(2)(E), to transfer the assets, *id*. § 1821(d)(2)(G), to determine claims, *id*. § 1821(d)(3)(A), to allow or disallow claims, *id*. § 1821(d)(5)(B)-(D), and to pay claims according to the priorities established by Congress, *id*. § 1821(d)(10), (11).

Plaintiffs' complaint seeks an order that would, among other things, declare that the FDIC-R "may not utilize the Rabbi Trust assets to pay any other creditors beyond the Deferred Compensation Plan participants (including the Plaintiffs)" and enjoin the FDIC-R from "engaging

---

[3] Plaintiffs also bring a claim for conversion, though they do not seek monetary damages – only "possession" of the Rabbi Trust assets.

United States District Court
Northern District of California

in any transfer, sale, liquidation, or other disposition of any Rabbi Trust assets." *See* Dkt. No. 1 at 18.  But the Court agrees with Defendant that granting such relief undisputedly would "restrain or affect" the FDIC-R's exercise of its broad receivership powers, which is impermissible under section 1821(j).  By definition, an order from this Court that prevents the FDIC-R from disposing of the Trust assets as it sees fit and instead mandates that those assets be retained for the benefit of certain parties (i.e. Plaintiffs) "restrain[s] or affect[s]" the exercise of the FDIC-R's power, for instance, to take over, liquidate or transfer FRB assets, and to pay claims against FRB according to statutory priority.  *See* 21 U.S.C. §§ 1821(d)(2)(B)(i), (d)(2)(E), (d)(2)(G), & (d)(10), (11).

To counter this conclusion, Plaintiffs argue that "the protection afforded by Section 1821(j) cannot be applied without determining whether the Rabbi Trust assets are a part of the receivership estate."  MTD Opp. at 12.  According to Plaintiffs, making that determination would benefit them by supposedly revealing that Plan participants (rather than FRB and the FDIC-R as its receiver) own the Rabbi Trust assets.  But even assuming that this position has merit (which seems far from assured, given that the language of the plan documents appears to vest FRB with the assets), Plaintiffs cite no authority for the proposition that section 1821(j) has an exception for disputes over ownership rights – possibly because one does not exist.  Courts do not "limit[] the application of § 1821(j) to assets 'owned' by a failed financial institution." *Bank of Am., N.A. v. Colonial Bank*, 604 F.3d 1239, 1245 (11th Cir. 2010).  Instead, the protections of section 1821(j) apply to the FDIC's handling of assets "found on hand" – owned or otherwise – since "identifying their proper nature and ownership, and ultimately disposing of these items to parties with valid claim" is part and parcel of the FDIC's "statutory receivership functions." *Id*. at 1243.  Therefore, even if title to or ownership over the Trust assets "never transferred to [First Republic Bank], § 1821(j) would still clearly bar judicial restraint of the FDIC as long as it acts in its receivership capacity." *Id*.; *see also Dobbins v. Dobbins*, No. CIV-14- 0257-HE, 2015 WL 3952737, at *3 (W.D. Okla. June 29, 2015) (rejecting plaintiffs' attempt to "challeng[e] whether the various interests ever became assets of the Bank in the first place" as jurisdictionally barred).

As the Court previously explained, *Abbott Bldg. Corp. v. United States* does not compel a contrary conclusion.  951 F.2d 191 (9th Cir.); *see also* Dkt. No. 20 (discussing case).  That action

United States District Court
Northern District of California

1    concerned the court's subject matter jurisdiction to hear the plaintiff's action against the FDIC's

2    predecessor agency, where the dispute focused on a third party's claim that its property was

3    improperly deeded to the receiver through foreclosure.  In ultimately finding jurisdiction present,

4    the Ninth Circuit clearly explained the limits of its holding, stating that it "did not mean to

5    establish the overly simple proposition that every time a party claims that a receiver has done an

6    act in an improper manner adjudication can have no effect upon the exercise of powers of the

7    receiver." *Id*. at 195.  Rather, to avoid creating "an overly broad exception" that would allow "any

8    clever pleader to swallow up the [predecessor] statute [to section 1821(j)] at will," the *Abbott* court

9    held only that "when [the FDIC's predecessor agency] purports to have acquired the property of

10   another through a foreclosure under the provisions of state law, the courts have jurisdiction to

11   decide whether that law was indeed followed." *Id*.  *Abbott* therefore does not support Plaintiffs'

12   position here, as this case does not concern the acquisition of a third party's property after

13   foreclosure.  While Plaintiffs decry this "narrow interpretation" as leading to "absurd results," the

14   Court's interpretation directly reflects the *Abbott* court's own express characterization of the

15   narrowness of that decision, and the results that flow from it appear to be those Congress intended,

16   given the judicial "ouster" that section 1821(j) embodies.

17        In another bid to avoid the jurisdictional bar, Plaintiffs contend that section 1821(j) does

18   not apply where claims have been exhausted through the FDIC-R's administrative-claims process.

19   Whether or not Plaintiffs' claims were properly exhausted (Defendant disputes that they were, *see*

20   MTD Reply at 19–20), the Court disagrees.  It is true that section 1821(d)(6)(A) allows agency

21   review or judicial determination of properly exhausted claims, which is the exception alluded to in

22   1821(d)(13)(D), which states that "no court shall have jurisdiction over" claims related to

23   receivership functions "except as otherwise provided in this subsection."[4]  "Read together,

24   [sections 1821(d)(13)(D) and (d)(6)(A)] mandate that administrative exhaustion is required before

25

26   [4] The existence of a claims process allays any due process concerns Plaintiffs raise pertaining to
     section 1821(j), as it only affects nonmonetary remedies and does not foreclose *all* judicial review.
27   *See Hindes*, 137 F.3d at 161 ("Our interpretation of section 1821(j) only denies appellants the
     declaratory and injunctive relief they now seek, but does not deny them judicial review" because
28   "[c]ourts uniformly have held that the preclusion of section 1821(j) does not affect a damages
     claim").

United States District Court
Northern District of California

any court acquires subject matter jurisdiction over a claim against the FDIC as receiver." *Tri-State Hotels, Inc. v. FDIC*, 79 F.3d 707, 712 (8th Cir. 1996) (internal citation and quotation omitted). However, administrative exhaustion is necessary but not sufficient for a court to have jurisdiction over an action: to the extent an administratively exhausted claim purports to restrain or affect the FDIC-R's receivership function, section 1821(j) functions as a freestanding jurisdictional bar. "[I]f following the FIRREA claims and appeals procedure cured any and all jurisdictional defects under § 1821(j), then § 1821(j) would be rendered a nullity, applying only where a case was already barred by not having been brought via the FIRREA claims procedure." *Koppenhoefer v. FDIC*, No. 1:13CV01237SLDJEH, 2014 WL 4748490, at *5 (C.D. Ill. Sept. 24, 2014).  Since the Court does not interpret the statute to contemplate such redundancy, it finds Plaintiffs' argument unavailing.  *See also Nat'l Tr. for Historic Pres. in U.S. v. FDIC*, 995 F.2d 238, 240 (D.C. Cir.), *reh'g granted, judgment vacated*, 5 F.3d 567 (D.C. Cir. 1993), *and opinion reinstated in part on reh'g*, 21 F.3d 469 (D.C. Cir. 1994) ("It would not be plausible, in light of § 1821(d)(13)(D), however, to read § 1821(j) as a bar only against circumvention of the statutory administrative claims procedure" since doing so "would overlook Congress's casting of § 1821(j)'s directive in terms, not of precluding claims, but of shielding the FDIC's exercise of its '"powers' and 'functions.'").

Moreover, Defendant contends that section 1821(j) is not the only provision that bars this Court's exercise of jurisdiction[].  It argues that Plaintiffs' request for the Court to "attach[]" and "turn over" the Rabbi Trust assets is separately barred by two provisions – 12 U.S.C. §§ 1821(d)(13)(C) and 1825(b)(2) – enacted "to allow the [FDIC] expeditiously to wind up the affairs of defunct [financial] institutions without judicial interference." *Volges v. RTC*, 32 F.3d 50, 52–53 (2d Cir. 1994).  Section 1821(d)(13)(C) provides that "[n]o attachment or execution may issue by any court upon assets in the possession of the receiver."  Section 1825(b)(2) similarly states that "[n]o property of the Corporation [i.e., the FDIC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation."  These provisions are explicit that the operative status of the assets is their *possession* by the FDIC, rather than its ownership of them.  *See, e.g.*,

*GWN Petroleum Corp. v. OK-Tex Oil & Gas, Inc.*, 998 F.2d 853, 857 (10th Cir. 1993).[5]  Since the FDIC-R plainly possesses the Rabbi Trust assets, the Court agrees that these sections further constrain the Court's ability to order the requested relief.

Accordingly, Defendant's motion is **GRANTED**.  Because the Court finds dismissal warranted under Rule 12(b)(1) due to FIRREA's jurisdictional bar, it will not take up Defendant's arguments regarding dismissal under Rule 12(b)(6).

## IV.   CONCLUSION

The Court **GRANTS** Defendant's motion to dismiss, Dkt. No. 28.  Given the nature of Plaintiffs' case, there are no allegations Plaintiffs could raise in an amended complaint to overcome the fact that FIRREA forecloses actions – like this one – which seek to "restrain or affect" the FDIC-R in fulfilling its receivership duties.[6]  *See* 21 U.S.C. § 1821(j).  Accordingly, the dismissal will be with prejudice.

The Clerk is directed to enter judgment in favor of Defendant and against the Plaintiffs, and to close the file.

**IT IS SO ORDERED.**

Dated:    7/12/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[5] Plaintiffs do not acknowledge these statutory provisions – or the conclusions that are compelled by them – at all in their opposition.

[6] Plaintiffs suggest that "[i]f the court were to find that [] the claim for conversion should properly be brought under the [Federal Tort Claims Act], the Plaintiffs respectfully seek leave to amend the Complaint and replead."  MTD Opp. at 20.  But the Court lacks jurisdiction over the complaint currently on file, and "'Plaintiff[s] cannot create jurisdiction by amendment where jurisdiction did not exist at the outset of a case.'"  *Sepehry-Fard v. Countrywide Home Loans. Inc.*, No. 13-CV-05769-BLF, 2016 WL 9175924, at *1 (N.D. Cal. Mar. 4, 2016) (alteration in original) (relying on *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) ("If jurisdiction is lacking at the outset, the district court has 'no power to do anything with the case except dismiss.'") (citation omitted)).  If Plaintiffs wish to raise a conversion claim for monetary damages under the Federal Tort Claims Act, nothing prevents them from suing the proper party (as opposed to the FDIC) and requesting that relief.  *See FDIC v. Craft*, 157 F.3d 697, 706–07 (9th Cir. 1998) ("Although such claims can arise from the acts or omissions of United States agencies (28 U.S.C. § 2671), an agency itself cannot be sued under the FTCA . . . . Consequently, we dismiss all claims against the FDIC for lack of jurisdiction.").

United States District Court
Northern District of California